UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| Brimstone Recreation, LLC, | ) |
| *Plaintiff*, | ) |
| v. | ) |
| Trails End Campground, LLC, et al., | ) |
| *Defendants*. | ) No.: 3:13-CV-331-PLR-HBG |
| Trails End Campground, LLC, et al., | ) |
| *Third Party Plaintiff*, | ) |
| v. | ) |
| Mark Love | ) |
| *Third Party Defendant*. | ) |

**Memorandum Opinion and Order**

Brimstone Recreation, the operator of a large off-road vehicle recreation area and campground in Huntsville, Tennessee, has brought this trademark infringement suit against its neighbor, Trails End Campground, alleging Trails End's use of the term "Brimstone" throughout its website and in a dozen or so domain names infringes upon Brimstone Recreation's registered trademarks. Trails End contends, based on evidence primarily dating back to the nineteenth and early twentieth centuries, that "Brimstone" is a geographical area near Huntsville, Tennessee and therefore is not protectable as a trademark. Accordingly, despite discovery not having commenced, Trails End and its owners have moved for summary judgment. For the reasons that follow, their motions will be denied.

## 1. Standard of Review

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 330 n.2 (1986); *Moore v. Philip Morris Co., Inc.*, 8 F.3d 335, 339 (6th Cir. 1993). All facts and inferences to be drawn therefrom must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. Ltd v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Keifer,* 301 F.3d 937, 942 (6th Cir. 2002). Courts may not resolve genuine disputes of fact in favor of the movant. *Tolan v. Cotton*, 134 S.Ct. 1861, 1863 (2014) (vacating lower court's grant of summary judgment for "fail[ing to] adhere to the axiom that in ruling on a motion for summary judgment, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor") (internal quotations and citations omitted).

Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations. *Celotex*, 477 U.S. at 317. To establish a genuine issue as to the existence of a particular element, the nonmoving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. Id.

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the fact finder. *Id*. at 250. The Court does not weigh the evidence or determine the truth of the matter.

2

*Id*. at 249.  Nor does the Court search the record "to establish that it is bereft of a genuine issue of fact."  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).  Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  *Anderson*, 477 U.S. at 250.

## 2.     Background

Brimstone Recreation, LLC operates a 19,000 acre recreational area near Huntsville, Tennessee where visitors can participate in ATV riding, hunting, fishing, hiking, mountain biking, and bird watching.  Brimstone also provides cabins, campgrounds, RV camping, ATV rentals, as well as canoe and kayak rentals.  Brimstone began leasing the property in 2005, prior to which the property was primarily used as timberland.  It was once owned by the Brimstone Land Company, and for a time in the nineteenth and early twentieth centuries it was part a geographic area known as Brimstone—the purported source of the current owners' name for their business—however, by the time Brimstone Recreation adopted its name, the use of "Brimstone" as a geographic area had allegedly fallen into obscurity.  There is no postal address for "Brimstone, Tennessee," and there are few remaining references to Brimstone other than references to the Brimstone Land Company or Brimstone Recreation LLC.

In 2005, Brimstone began developing trails on the property for ATVs and other off-road vehicles, and it sells permits for visitors to use the trails for recreational purposes.  Brimstone claims to have spent over $750,000 advertising their business, and that it is one of the best known ATV and off-road parks in the Southeast United States, drawing tens of thousands of visitors every year.

3

Mark Love, Brimstone's owner, registered the "Brimstone" marks with the United States Patent and Trademark Office under U.S. Registration No. 3,384,209, issued February 19, 2008, and No. 3,328,699, issued November 6, 2007. Mr. Love contends he exclusively licenses the "Brimstone" marks to Brimstone Recreation.

The defendants opened a campground adjacent to Brimstone's property in 2007. Initially, the defendants had a good relationship with Brimstone. For several years, Brimstone and Trails End had a business relationship where Brimstone booked customer reservations for Trails End's lodging and campground. In exchange, Trails End paid Brimstone a percentage of the total reservation fee. In 2011, Brimstone opened its own campground to hold overflow from Trails End's campground when Brimstone had a large event.

At some point, the relationship soured and was terminated. Since the relationship was terminated, Brimstone's campground has been in direct competition with Trails End's campground. Also since that time, the defendants have used the term "Brimstone" in marketing their business, and have registered at least ten domain names for websites including the word "Brimstone." Additionally, the plaintiffs allege the defendants are using the "Brimstone" mark to sell permits to off-road trails not actually affiliated with the plaintiffs. The plaintiffs contend the defendants have taken these actions to confuse customers and benefit from goodwill associated with the "Brimstone" marks.

On June 13, 2013, Brimstone filed a complaint alleging federal and common-law infringement and unfair competition claims, cybersquatting, copyright infringement, violations of the Tennessee Consumer Protection Act, and tortious interference with business relationships. [R. 1]. The defendants answered and filed several counterclaims, including one seeking to cancel Brimstone's trademark registration because, the defendants allege, Mr. Love fraudulently

4

obtained the trademarks by failing to indicate that Brimstone was a geographical location on his trademark applications. [R. 26]. Prior to the initiation of discovery, the defendants moved for summary judgment on all of Brimstone's claims except the tortious interference and copyright claims. [R. 27, 40].

### 3. Analysis

#### A. Standing

The defendants contend Brimstone does not have standing to bring its trademark infringement claim under 15 U.S.C. § 1114 (Count I) or its cybersquatting claim under 15 U.S.C. § 1125(d) (Count III) because Brimstone is a mere licensee—not the owner or assignee of the trademark. According to the defendants, only the registered owner or an assignee of a trademark has standing to sue for infringement.

The text of the Lanham Act and the majority of cases interpreting it only provide standing for owners or assignees to sue for infringement. *See* 6 McCarthy on Trademarks and Unfair Competition § 32.3 (4th Ed.). However, "[d]espite [the] definite and unambiguous statutory language, a few courts have said, usually in dictum, that in certain circumstances an exclusive licensee may have standing to sue under Section 21(1)." *Id.* The Sixth Circuit is one of those few courts; it has allowed an exclusive licensee to sue for infringement of a registered mark owned by the licensor. *See Wynn Oil Co. v. Thomas*, 839 F.2d 1183 (6th Cir. 1988); *Bliss Clearing Niagara, Inc. v. Midwest Brake Bond Co.*, 339 F.Supp.2d 944, 960-61 (W.D. Mich. 2004) (holding an exclusive licensee's interest is sufficient to confer standing to maintain infringement and dilution claims).

The Court, however, need not attempt to reconcile *Wynn Oil* and *Bliss Clearing* with the holdings of other circuits or the "unambiguous language" of the statute because Brimstone and

5

Mark Love (the registered owner of the trademark) have moved to amend the complaint under Fed. R. Civ. P. 15(a) to add Mr. Love as a plaintiff.

Courts should freely give leave to amend a complaint when justice so requires. Fed. R. Civ. P. 15(a)(2). In deciding whether to grant a motion to amend, courts should consider undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, undue prejudice to the opposing party, and futility of amendment. *Brumbalough v. Camelot Care Ctrs., Inc.*, 427 F.3d 996, 1001 (6th Cir. 2005). Because there is no evidence to indicate bad faith on the part of Brimstone, undue prejudice to the defendants, a lack of notice to the defendants, and because the amendment would resolve any potential standing issues, Mr. Love and Brimstone's motion to amend will be granted. The Court will consider the defendants' motions for summary judgment in light of the forthcoming amendment adding Mr. Love as a plaintiff. In that light, the defendants' standing arguments evaporate and their motion for summary judgment based on standing will be denied.

### B. Validity of Brimstone's Trademarks

The defendants contend Brimstone's trademarks are invalid (and therefore unenforceable) because the term "Brimstone" is geographically descriptive and has not obtained a secondary meaning. They also filed a counterclaim seeking cancellation of the registration of the Brimstone marks based on Mr. Love's alleged failure to disclose to the U.S. Patent and Trademark Office that the term "Brimstone" is a geographical designation. [R. 11, p. 16].

The Lanham act provides that a mark becomes "incontestable" if it is not successfully challenged within five years of registration. 15 U.S.C. § 1065. Incontestable marks cannot be challenged on grounds that they are "merely descriptive." *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 196 (1985). That is, "a mark may be canceled on the grounds that it is

6

merely descriptive only if the petition to cancel is filed within five years of the date of registration." 15 U.S.C. § 1064(a); *Park 'N Fly*, 469 U.S. at 197. On the other hand, a mark may be canceled at any time if it was obtained fraudulently. 15 U.S.C. § 1064(c); *Park 'N Fly*, 469 U.S. at 202.

Brimstone registered its marks in November 2007 and February 2008. The marks became incontestable under 15 U.S.C. § 1065 in November 2012 and February 2013. Accordingly, the validity of Brimstone's trademarks cannot be challenged on the grounds that they are merely descriptive and have not obtained a secondary meaning.

The defendants contend in their counterclaim that Mr. Love fraudulently represented in his federal trademark applications that the date of first use of the mark was October 5, 2001, and the date of first use in commerce was September 25, 2005, when, in actuality, Mr. Love and Brimstone did not begin using the mark in commerce until at least 2006. [R. 11, p. 18]. Moreover, the defendants claim Mr. Love made a material misrepresentation of fact in connection with his trademark applications by failing to identify "Brimstone" as a geographical area. *Id.* Accordingly, the defendants seek cancellation of the registrations. *Id.*

The defendants have not, however, moved for summary judgment on their counterclaim. Their present motions for summary judgment focus almost entirely on the geographical descriptiveness of the marks and the lack of a secondary meaning—not on Mr. Love's allegedly fraudulent applications for the marks. Accordingly, for the purposes of summary judgment, the Court will consider Brimstone's marks as valid and incontestable. Should the Court determine Mr. Love fraudulently registered the marks at a later stage in this litigation, the defendants will then be free to challenge the plaintiffs' infringement claims on trademark validity grounds. Until then, to the extent the defendants seek summary judgment based on their allegation that the

7

marks are invalid as geographically descriptive and lacking a secondary meaning, their motions will be denied.

### C. Trademark Infringement, Unfair Competition, and the Consumer Protection Act

The core of a trademark infringement claim brought under 15 U.S.C. § 1114(1) is "whether the defendant's use of the disputed mark is likely to cause confusion among consumers regarding the origin of the goods offered by the parties." *Autozone, Inc. v. Tandy Corp.*, 373 F.3d 786, 791 (6th Cir. 2004) (quoting *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 280 (6th Cir. 1997)); *see also* 15 U.S.C. § 1114(1)(a) ("Any person who shall, without the consent of the registrant . . . use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . . shall be liable in a civil action by the registrant. . . ."). A claim for unfair competition requires substantially the same analysis, (15 U.S.C. § 1125(a)(1)(A); *see also Autozone*, 373 F.3d at 792), as do Tennessee unfair-competition claims, common-law infringement claims, and claims for violation of the Tennessee Consumer Protection Act. *See Microsoft Corp. v. Sellers*, 411 F.Supp.2d 913, 920 (E.D. Tenn. 2006); *Men of Measure Clothing, Inc. v. Men of Measure, Inc.*, 710 S.W.2d 43 (Tenn. Ct. App. 1986).

In determining whether there is a likelihood of confusion, the Sixth Circuit has established eight factors to balance:

1. the strength of the senior mark;
2. similarity of the marks;
3. relatedness of the goods or services;
4. evidence of actual confusion;
5. marketing channels used;
6. likely degree of purchaser care;

7. the intent of Trails End in using the Brimstone mark; and
8. the likelihood of expansion of the product lines.

*Autozone*, 373 F.3d at 792-93 (citing *Frisch's Rests, Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642, 648 (6th Cir. 1982)). These factors are not meant to be applied with mathematical precision, but simply guide the Court in determining whether confusion is likely. Ultimately, the question of chief importance is "whether relevant consumers are likely to believe that the products or services offered by the parties are affiliated in some way." *Id.* at 793 (quoting *Homeowners Group, Inc. v. Home Mktg. Specialists, Inc.*, 931 F.2d 1100, 1107 (6th Cir. 1991)).

### i. Strength of the Brimstone mark

The strength of a trademark is a factual determination and it relates to the mark's distinctiveness. *Autozone*, 373 F.3d at 793. A mark is considered strong and distinctive "when the public readily accepts it as the hallmark of a particular source . . . [and] such acceptance can occur when the mark is unique, when it has received intensive advertisement, or both." *Id.* at 793-94 (quoting *Daddy's Junky Music Stores*, 109 F.3d at 280). Trademarks are often categorized, in descending order of strength, as fanciful, arbitrary, suggestive, or descriptive. *Id.* (citing *Little Ceasar Enters., Inc. v. Pizza Caesar, Inc.*, 835 F.2d 568, 571 (6th Cir. 1987)). Descriptive trademarks are considered weaker, and confusion is less likely where weak marks are used. *Id.* Descriptive trademarks can be strong though. Incontestable marks, even merely descriptive ones, are presumed to be strong, distinctive marks. *Autozone*, 373 F.3d at 794.

Finally, a defendant may rebut the presumed strength of an incontestable mark by proving extensive third party use of similar marks. *Id.* This is because:

> Treating a valid, incontestable trademark as an exceptionally strong mark for the purposes of determining whether confusion is likely to occur, without examining whether the mark is distinctive and well-known in the general population, would shift the focus away from the key question of "whether relevant consumers are

9

likely to believe that the products or services offered by the parties are affiliated in some way." . . . Although a trademark may be "strong and worthy of full protection" because it is valid and incontestable, . . . that does not necessarily mean that its strength is particularly relevant to the ultimate issue of whether confusion is likely to occur.

*Thema–Scan, Inc. v. Thermoscan, Inc.*, 295 F.3d 623, 630 (6th Cir.2002) (internal citations omitted).

In the present case, the marks at issue are incontestable and presumed to be strong marks. To rebut the presumed strength of the Brimstone marks, the defendants have presented evidence of third party use of the term "Brimstone" and evidence that Brimstone is a known geographic area. Some of the defendants' evidence includes:

- An act of the State of Tennessee establishing Scott County and describing one of its boundaries as the line dividing Smoky and Brimstone;
- Literature from the Tennessee Department of Environment and Conservation that makes reference to the "Brimstone tracts;"
- Print-outs from the internet discussing the history of Tennessee and the significance of Brimstone to its early settlers;
- A topographic map showing "Brimstone Ridge;"
- There are a handful of businesses in East Tennessee with "Brimstone" in their names;
- A trail map, published by the plaintiffs, discussing the historic origins of their "Brimstone" name
- A weather listing for Brimstone, Tennessee

[R. 47, p. 10].

The plaintiffs agree that the historical documents from the 1800s and early 1900s referenced by the defendants do in fact refer to a geographic Brimstone area; however, by the time the plaintiffs began using the Brimstone mark in 2005, they contend there was no area in the region commonly known as Brimstone. The only contemporary references to Brimstone were to the long-time prior owner of the plaintiffs' property—the Brimstone Land Company. The

plaintiffs argue that shorthand references to the property owned by the Brimstone Land Company as the "Brimstone Tract" is no different from referring to plaintiffs' counsel's property as the "Bradford Tract." Such a shorthand references do not make Bradford a geographic location.

In response to the weather listing for Brimstone, the plaintiffs point out that there is also a weather listing for Disney World. Surely the defendants do not think Disney is not protected as a trademark because one can find it on a weather map. Finally, the plaintiffs also note that there is no postal address located in Brimstone, Tennessee.

In searching for a place known as Brimstone, Tennessee, the Court almost exclusively found references to Brimstone Recreation. In fact, despite having spent a considerable amount of time in Scott County, Tennessee, this Court has never heard of a geographic location known as Brimstone.

To the extent there is a geographic location known as Brimstone, apart from Brimstone Recreation, the evidence submitted by the defendants makes clear it is fairly obscure. That Brimstone is mentioned in connection with an old logging company, or that there are a few mentions of Brimstone found deep within the bowels of the internet, is insufficient for the Court to find, as a matter of law, that Brimstone is a well-known geographic area. Accordingly, the presumption of strength in the plaintiffs' marks remains.

### ii. Similarity of the marks and relatedness of goods or services

There is no dispute that the marks used by the defendants are identical to those used by the plaintiffs. The defendants have registered numerous domain names using "Brimstone" in the title, including:

- brimstonetrailsendcampground.net;
- brimstonecamping.com;

11

- brimstonepermits.com;
- brimstonelodging.com;
- brimstonetrails.net;
- recreationbrimstone.net;
- brimstoneatvtrails.net;
- brimstonecampgroundandatvpark.net; and
- brimstonecampgroundoffroadpark.net.

All these domains take visitors to Trails End's website, where "Brimstone" is used extensively, including in the sale of off-road permits for trails not actually affiliated with the plaintiffs.

In addition to the marks being identical, the goods and services offered by the two parties are the same. Brimstone Recreation offers off-road trails, cabins, RV areas, campgrounds, ATV rentals, and canoe/kayak rentals. Likewise, the defendants offer ATV rentals, trail permits, camping, and RV sites. In fact, the defendants' counterclaim specifically argues that Brimstone's camping facilities are direct competitors with Trails End. [R. 26, p.13]. The use of the word "Brimstone" along with the nearly identical array of services offered makes it more likely that consumers will believe Brimstone and Trails End are affiliated. *See Wynn Oil Co. v. Thomas*, 839 F.2d at 1190-91 ("[c]ases where a defendant uses an identical mark on competitive goods hardly ever find their way into the appellate courts. Such cases are 'open and shut' and do not involve protracted litigation to determine liability for trademark infringement.").

### iii. The intent of Trails End in using the Brimstone mark

The defendants strenuously argue that they use the term "Brimstone" to identify the geographic location of their business. However, taking the evidence in the light most favorable to the non-movant, it is also reasonable to conclude that the defendants are using the Brimstone marks to confuse customers into believing the two businesses are affiliated.

In sum, balancing the relevant factors indicates there is at least a material question of fact with respect to the ultimate question of whether consumers are likely to believe Brimstone

12

Recreation and Trails End are affiliated in some way. Accordingly, the defendants are not entitled to summary judgment on the infringement, unfair competition, and Consumer Protection Act claims, and their motions will be denied.

**D. Fair Use**

Title 15 U.S.C. § 1115(b)(4) provides a fair use defense that applies when "the name, term, or device charged to be an infringement is a use, otherwise than as a mark, . . . of a term or device which is descriptive of and used fairly and in good faith only to describe the goods or services of such party, or their geographic origin." The defendants contend their numerous domain names serve to accurately describe their business. For example, the defendants say the domain names brimstonepermits.com, brimstonetrails.net, recreationbrimstone.net, brimstoneatvtrails.net, or brimstonecampgroundoffroadpark.com all accurately describe the services and features of the defendants' business and its geographic location. Accordingly, the defendants contend, they are entitled to the fair use defense.

Under the fair use doctrine, "the holder of a trademark cannot prevent others from using the word that forms the trademark in its primary or descriptive sense." *Herman Miller, Inc. v. Palazzetti Imports and Exports, Inc.*, 270 F.3d 298, 319 (6th Cir. 2001); *see also* McCarthy on Trademarks & Unfair Competition § 11:45 (4th Ed.). In evaluating a defendant's fair use defense, a court must consider whether [the] defendant has used the mark: (1) in its descriptive sense; and (2) in good faith." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 612 (6th Cir. 2009) (quoting *ETW Corp. v. Jireh Pub., Inc.*, 332 F.3d 915, 920 (6th Cir. 2003)). The fair use defense contemplates and tolerates "some possibility of consumer confusion." *KP Permanent Make-Up, Inc. v. Lasting Impressions I, Inc.*, 543 U.S. 111, 121 (2004). However, this "does not foreclose

13

the relevance of the extent of any likely consumer confusion in assessing whether a defendant's use is objectively fair." *Id.* at 123.

Whether the defendants have used the Brimstone mark in the descriptive sense and in good faith presents a material question of fact. Taking the facts in the light most favorable to the non-movants, the Court could reasonably conclude that the defendants' registration of at least ten domain names including the word "Brimstone" was done in bad faith. *See* 15 U.S.C. §1125(d)(1)(B)(i)(I) and (VIII). Moreover, it would be reasonable to conclude that the defendants used the word "Brimstone" not to identify the geographic location of their business, but to trade on the goodwill of the plaintiffs' marks. Brimstone does not appear to be a widely-known geographic location—especially to out of state off-road enthusiasts planning trips to ride on Brimstone Recreation's trails. Instead of describing the defendants' physical location, the use of the word "Brimstone" in domain names such as recreationbrimstone.net or brimstonetrails.com could very well be meant to confuse consumers into thinking Trails End is affiliated with Brimstone Recreation, LLC. Accordingly, summary judgment on the defendants' fair use defense will be denied.

**E. Cybersquatting**

The defendants contend the Court should grant summary judgment on the cybersquatting claim for the same reason they seek summary judgment on the rest of the plaintiffs' claims. They argue the Brimstone mark is not distinctive and therefore not protected by 15 U.S.C. § 1125(d)(1)(A), which provides that a cybersquatter is potentially liable to the owner of a protected mark if the alleged cybersquatter intends, with bad faith, to profit from the mark and registers or uses a domain name that, in the case of a mark that is distinctive, is identical or confusingly similar to the mark. Because the term "Brimstone" is geographically descriptive, the

14

defendants argue, it is not distinctive and protected by § 1125(d). However, as discussed above, whether "Brimstone" is primarily a geographically descriptive term and whether the defendants acted in bad faith are questions of fact. Accordingly, summary judgment will be denied with respect to these claims.

### F. More Accurate Statement and Need for Additional Discovery

The defendants contend the plaintiffs' claims for statutory damages and attorneys' fees under the Copyright Act should be stricken because statutory damages and attorneys' fees are only available in cases where the plaintiff registers the allegedly infringed work before or within three months of a defendant publishing the infringing content. *See* 17 U.S.C. § 412. The defendants contend the plaintiffs did not register the infringed work prior to or within three months of the defendants' publication of the trail map. Additionally, the defendants move for a more definite statement regarding what "other content on Trails End's Websites" is infringing on the plaintiffs' copyrights.

The plaintiffs respond by moving under Federal Rule of Civil Procedure 56(d) to be allowed time to take discovery. They contend they are only aware at the present time of the defendants' infringement of their trail map, however, "based on the defendants' action in blatantly copying the trail map and registering domain names that obviously infringe upon the Plaintiffs' trademarks," they suspect there may be other cases of copyright infringement.

The defendants object to discovery on the grounds that the plaintiffs simply want to go on a fishing expedition; however, this argument is unavailing. The materials necessary to determine if and when infringing materials were published by the defendants are solely in the defendants' possession. Accordingly, the plaintiffs will be afforded the opportunity to engage in discovery regarding what infringing materials, in any, were published by the defendants. Such discovery

15

will enable the plaintiffs to provide a more definite statement of their copyright infringement claims, and will allow them to address the timing of the defendants' infringement as it relates to their claim for statutory damages and attorneys' fees. Accordingly, the defendants' motions to strike and for a more definite statement are denied without prejudice to refile after discovery.

### 4. Conclusion

For the foregoing reasons, Brimstone's motion to amend to add Mark Love as a plaintiff (contained in its Response, [R. 41, p. 9]) is **GRANTED**. The defendants' motions for summary judgment and a more definite statement, [R. 27, 40], are **DENIED**.

**It is so ORDERED.**

_____
**UNITED STATES DISTRICT JUDGE**